Submitted on record and briefs March 10, affirmed December 1, 2004, petition for review denied April 5, 2005 (338 Or 375)

## TYRONE EARL WALTON,
*Appellant,*

*v.*

## S. Frank THOMPSON,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

### 97C10421; A112207

102 P3d 687

James N. Varner filed the opening brief. Tyrone Walton filed the supplemental brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kathleen Cegla, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, Brewer, Chief Judge,* and Ortega, Judge.

HASELTON, P. J.

---

* Brewer, C. J., *vice* Deits, J. pro tempore

**HASELTON, P. J.**

Petitioner appeals from the trial court's denial of his petition for post-conviction relief, asserting that the trial court erred in its disposition of various claims. We write only to address petitioner's assertion that the trial court erred in rejecting his claim that his consecutive sentences on two counts of aggravated murder were unlawful under *State v. Barrett*, 331 Or 27, 10 P3d 901 (2000). For the reasons that follow, we affirm.

Petitioner was convicted in 1988 of two counts of aggravated murder, one count of felony murder, and one count of robbery and was sentenced to death. Both counts of aggravated murder related to the same victim, but each alleged a different theory of the crime. In *State v. Walton*, 311 Or 223, 809 P2d 81 (1991) (*Walton I*), the Oregon Supreme Court affirmed petitioner's convictions but vacated the death sentence and remanded the case for a new penalty-phase proceeding. On remand, petitioner's counsel argued that the court lacked authority to impose consecutive sentences on the two counts of aggravated murder "because they involve[d] one victim and one single act." Counsel acknowledged, however, that the case law did not support his position. Petitioner was sentenced to consecutive life sentences with 30-year minimum terms on the two counts of aggravated murder. The court merged the felony murder conviction into one of the aggravated murder convictions but did not merge the robbery conviction.

Petitioner appealed again, making several arguments. First, he argued that the court, on remand, erred in imposing consecutive sentences on the aggravated murder convictions because in *Walton I* he had challenged the sentence on only one of those convictions.[1] We rejected petitioner's premise, noting that the "death sentence applied to

---

[1] We described that argument as follows:

"Defendant next argues that the trial court erred in imposing consecutive sentences on his two aggravated murder convictions. His contention on appeal is that the trial court's failure to impose consecutive sentences on the aggravated murder convictions at the time that defendant was originally sentenced to death precluded the court from imposing them on remand. Defendant argues that he only challenged the death sentence, and that the death sentence applied only to one count of aggravated murder. Thus, defendant argues that

both convictions [for] aggravated murder." *State v. Walton*, 134 Or App 66, 71, 894 P2d 1212, *rev den*, 321 Or 429 (1995) (*Walton II*). Petitioner further argued that the court erred in failing to merge his robbery conviction into the aggravated murder conviction that was based on the robbery. We agreed that, under *State v. Tucker*, 315 Or 321, 845 P2d 904 (1993), robbery was a lesser-included offense of the aggravated murder and thus should merge. *Walton II*, 134 Or App at 72-74.[2] We therefore remanded with instructions to vacate the robbery sentence and to enter an amended judgment merging the robbery conviction with one of the aggravated murder convictions. *Id.* at 75.

On remand, the trial court merged the robbery conviction into one of the aggravated murder convictions and rejected petitioner's attempts to raise other issues, on the ground that the remand was limited to that single issue.

Petitioner did not appeal from the resentencing following the remand in *Walton II*. Instead, petitioner filed this action for post-conviction relief. Petitioner alleged that trial counsel, as well as appellate counsel involved in *Walton I*, were inadequate in numerous respects. He also alleged that he was denied a fair trial due to alleged prosecutorial misconduct in the initial proceeding. In his final claim for relief—which is the sole object of our discussion here—petitioner alleged, among other things, that he was denied a fair trial and deprived of numerous constitutional rights on the ground that the trial court in the second and third sentencing proceedings "sentenced petitioner to a sentence not authorized by law." Notably, petitioner did not frame his final claim for relief in terms of whether he received adequate assistance of counsel.

■  As pertinent to petitioner's final claim for relief—and, particularly, petitioner's allegation that the imposition

---

he did not challenge the sentence on the other aggravated murder count and that, on remand, the court could not sentence him to a consecutive life term on that count."

*State v. Walton*, 134 Or App 66, 71, 894 P2d 1212, *rev den*, 321 Or 429 (1995) (*Walton II*) (footnote omitted).

[2] That aspect of *Tucker* was implicitly overruled by *State v. Barrett*, 331 Or 27, 37 n 4, 10 P3d 901 (2000). *See State v. Ramsey*, 184 Or App 468, 477 n 5, 56 P3d 484 (2002), *rev den*, 335 Or 479 (2003).

of consecutive life sentences on the two aggravated murder counts was a sentence "not authorized by law"—the post-conviction court found the following facts:

"34. Petitioner appealed the imposition of consecutive life sentences after they were imposed on [the initial] remand. The Court of Appeals rejected his challenge in [*Walton II*].

"* * * * *

"53. Petitioner challenged the sentence imposed by the sentencing court on direct appeal. Thus, ORS 138.550(2) bars his claim the court erred in sentencing him. On petitioner's second remand, the sentencing court imposed the same sentence affirmed by the Court of Appeals, with one modification that was beneficial to petitioner.

"* * * * *

"CONCLUSIONS OF LAW

"* * * * *

"6. Petitioner's claims against the trial court and sentencing court are barred by the Oregon Supreme Court's opinion in *Palmer v. State of Oregon*, 318 Or 352[, 867 P2d 1368] (1994), or, ORS 138.550(2)."

On appeal, petitioner asserts that the trial court erred in imposing consecutive sentences on the two counts of aggravated murder because, under *Barrett*, a single conviction and sentence for aggravated murder is appropriate in circumstances such as this, where there is only one victim but the evidence supported multiple theories that aggravated murder had been committed. *See Barrett*, 331 Or at 37. Petitioner further contends that, notwithstanding *Palmer*, his failure to predicate his challenge to the imposition of the consecutive life sentences on allegations of inadequate assistance of counsel is not conclusive. Rather, petitioner asserts, his post-conviction challenge to the imposition of the consecutive sentences is independently cognizable pursuant to ORS 138.530(1)(c) (post-conviction relief shall be granted where the petitioner establishes, *inter alia*, that the sentencing court imposed a "[s]entence in excess of, or otherwise not in

accordance with, the sentence authorized by law for the crime of which petitioner was convicted").

We note, at the outset, that, under *Barrett*'s reasoning, the imposition of multiple convictions for two counts of aggravated murder involving a single victim was, in fact, improper. *See Barrett*, 331 Or at 37 (holding that, in those circumstances, the trial court should have "enter[ed] one judgment of conviction reflecting the defendant's guilt on the charge of aggravated murder, which judgment separately would enumerate each of the existing aggravating factors"). It is undisputed that petitioner's convictions are analogous to those at issue in *Barrett*. That is, had *Barrett* been the law at the time of petitioner's conviction, only one conviction and sentence would have resulted from the two counts of aggravated murder.[3]

Given that conclusion, the question is whether the post-conviction court correctly denied petitioner post-conviction relief based on ORS 138.550(2) and *Palmer*. ORS 138.550(2) provides, in part:

"When the petitioner sought and obtained direct appellate review of the conviction and sentence of the petitioner, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding."

*Palmer* stands for the basic proposition that, "[w]hen a criminal defendant fails to raise an issue at trial that the defendant reasonably could have been expected to raise, the defendant cannot obtain post-conviction relief" unless he or she demonstrates that the failure to raise the issue falls within one of several "narrowly drawn exceptions." *Palmer*, 318 Or at 358. Those exceptions include

" 'where the right subsequently sought to be asserted was not generally recognized to be in existence at the time of trial; where counsel was excusably unaware of facts which would have disclosed a basis for the assertion of the right; and where duress or coercion prevented assertion of the right. Also, the failure to assert the right would not be a bar

---

[3] On the other hand, had *Barrett* been the law at the time of petitioner's crime, his robbery conviction would not have been merged into one of the aggravated murder convictions. *See* 196 Or App at 338 n 2.

where counsel was incompetent or was guilty of bad faith.' "

*Id.* at 357 (quoting *North v. Cupp*, 254 Or 451, 456-57, 461 P2d 271 (1969), *cert den*, 397 US 1054 (1970)). While *Palmer* primarily concerned ORS 138.550(1) and the failure to preserve an issue at the trial level, its rationale applies with equal force to situations such as this, where an issue was preserved at the trial level but was not asserted on direct appeal.

Petitioner advances several arguments as to why ORS 138.550(2) and *Palmer* do not preclude relief under the circumstances. First, as noted, petitioner argues that *Palmer* is inapplicable to "unauthorized sentence" claims under ORS 138.530(1)(c). Petitioner notes that we did not decide that issue in *Blackledge v. Morrow*, 174 Or App 566, 571-72, 26 P3d 851, *rev den*, 332 Or 558 (2001), declining to reach it as an alternative basis for affirmance on the ground that it was appropriate for the trial court to decide the issue in the first instance. Petitioner's argument, as we understand it, is that *Palmer* is inapposite because the claim at issue in *Palmer* concerned the unconstitutionality of a statute, ORS 138.530(1)(d), and the one here pertains to an allegedly "unauthorized sentence" under ORS 138.530(1)(c). The holding in *Palmer* was not, however, so circumstantially circumscribed. As noted above, *Palmer* was based in part on an earlier case, *North*. In *Palmer*, the court rejected the notion that the rule of law from *North* should be limited to claims under ORS 138.530(1)(a) (substantial denial of constitutional rights):

> "The governing rationale in *North* was that the usual procedural rule requiring that an error be preserved in the trial court in order to be raised on appeal would be 'completely eroded by permitting the granting of relief in post-conviction proceedings in the absence of an objection at trial.' 254 Or at 451. That rational applies with equal force to the facts alleged here, where (so far as we can determine from the pleadings), the failure to raise the issue in the criminal trial court is irrelevant to any available ground for post-conviction relief."

*Palmer*, 318 Or at 360; *see also id.* at 361, 361 n 7 (distinguishing *Wells v. Peterson*, 315 Or 233, 844 P2d 192 (1992), on ground that in *Wells*, unlike in *Palmer*, the state had not argued "that a petitioner who seeks post-conviction relief

based on an issue not raised at trial must prove that the failure to raise the issue constituted inadequate assistance of trial counsel or that the petitioner otherwise could not reasonably have been expected to raise the issue at trial").

We thus conclude that the rationale of *Palmer* and *North* applies to all grounds for post-conviction relief set forth in ORS 138.530(1), including an "unauthorized sentence" claim under ORS 138.530(1)(c). Thus, petitioner was obligated either to allege and prove that his counsel's failure to challenge the imposition of the consecutive life sentences constituted inadequate assistance of counsel, *see generally Palmer*, or to establish that such a challenge "could not reasonably have been asserted in the direct appellate review proceeding." ORS 138.550(2); *cf. Palmer*, 318 Or at 357 (exception from general rule exists "where the right subsequently sought to be asserted was not generally recognized to be in existence at the time of trial").

Because petitioner did not predicate his challenge to the imposition of the consecutive life sentences on allegations of inadequate assistance of counsel, the cognizability of his challenge reduces to whether such a challenge "could not reasonably" have been raised on direct appeal. ORS 138.550(2). As noted above, *see* 196 Or App at 337, counsel actually did raise a challenge to the imposition of consecutive life sentences on remand after *Walton I*. The question is whether the particular challenge raised here—which, if made at that time, would have anticipated *Barrett*'s reasoning and result—could not reasonably have been asserted on appeal in *Walton II*.

Perhaps the strongest support for petitioner's position that his current argument could not reasonably have been asserted on direct appeal is that, in *State v. Hessel*, 117 Or App 113, 844 P2d 209 (1992), *rev den*, 318 Or 26 (1993), we had rejected an identical argument. *Hessel*, like this case, involved multiple counts of aggravated murder based on different theories of the killing of the same person. The defendant there argued that separate convictions and sentences for alternative theories of aggravated murder premised on a single homicide must merge. We rejected that argument, holding that the convictions did not merge pursuant to ORS

161.067. 117 Or App at 122; *see also State v. Burnell,* 129 Or App 105, 877 P2d 1228 (1994) (multiple murder convictions involving a single victim did not merge). Our holdings in *Hessel* and *Burnell* antedated *Walton II.*[4]

■ As an initial matter, we address an issue not raised by the parties, but pertinent to our disposition of petitioner's claim. We have previously held that the "could not reasonably have been asserted" exception to ORS 138.550(2) is limited to constitutionally grounded contentions, *see Myers v. Cupp,* 49 Or App 691, 695-97, 621 P2d 579 (1980), *rev den,* 290 Or 491 (1981). Here, petitioner's *Barrett*-based challenge is purely statutory and, in fact, is essentially identical to the nonconstitutional issue in *Myers.* Thus, if we adhere to *Myers,* it is dispositive. However, for the reasons that follow, we conclude that our decision in *Myers* was plainly wrong. *See Newell v. Weston,* 156 Or App 371, 380, 965 P2d 1039 (1998), *rev den,* 329 Or 318 (1999) (describing standard for overruling precedent). Accordingly, we overrule *Myers.*

We begin with our cases that antedated *Myers.* In *Nunn v. Cupp,* 10 Or App 528, 500 P2d 1237 (1972), the petitioner sought post-conviction relief on the ground that an illegally obtained confession had been admitted into evidence. Although the petitioner had unsuccessfully raised the issue on direct appeal, we concluded that his post-conviction claim was not barred, given a change in the law concerning the admissibility of confessions after his appeal had concluded. We explained:

> "In general, an issue raised and considered in a direct criminal appeal cannot subsequently be raised again in post-conviction proceedings. But this is not the general case. Here the issues concerning petitioner's confession raised in his direct appeal were judged by the law in effect at that time. However, since petitioner's appeal was decided the law has been changed * * *. In this situation it is not correct to regard the result in petitioner's appeal, in which one set of rules were applied, to be binding in this

---

[4] Although our decision in *Burnell* issued nearly 10 months before *Walton II, Walton II* was argued and submitted for decision roughly six weeks before *Burnell* was argued and submitted.

post-conviction proceeding, in which new and different rules must be applied."

10 Or App at 534 (citations omitted). Nothing in *Nunn* indicates that, to avoid the "raisable on direct appeal" bar in post-conviction relief proceedings, the intervening change in the law had to be constitutional in nature.

In *Pettibone v. Cupp*, 43 Or App 955, 607 P2d 742 (1979), *rev den*, 289 Or 45 (1980), the petitioner sought post-conviction relief on the ground that the jury in his criminal trial had been erroneously instructed on the burden of proof. He did not raise the issue on direct appeal. He claimed that the instruction that the court had delivered unconstitutionally shifted the burden of proof. Meanwhile, the Supreme Court declared unconstitutional the statute on which the jury instruction had been based. We concluded that the error was cognizable because the exception to the "raise it or waive it" rule under ORS 138.550(2) applies to any "ground" that could not reasonably have been asserted. We noted that ORS 138.530(1)(a) expressly provides that one "ground" for post-conviction relief is a "[s]ubstantial denial * * * of petitioner's rights under the Constitution of the United States or under the Constitution of the State of Oregon." *Pettibone*, 43 Or App at 957.

Thus, we indicated in *Pettibone* that (1) the references to "ground" in ORS 138.530 and ORS 138.550 mean the same thing, and (2) because one "ground" for post-conviction relief is a violation of a petitioner's constitutional rights, a constitutional ground that could not reasonably have been raised on direct appeal can be the basis for post-conviction relief on the same ground. Again, as in *Nunn,* nothing in *Pettibone* said, much less held, that a change in law must be "constitutional" in nature for the exception in ORS 138.550(2) to apply.

We come, then, to *Myers*. There, the post-conviction petitioner asserted that the trial court in the underlying criminal case erred in failing to merge several of his convictions, and that the error could not reasonably have been raised on direct appeal, citing ORS 138.550(2). 49 Or App at 694. This court stated:

"[W]here a new constitutional principle is recognized between the time of a petitioner's direct appeal and his petition for post-conviction relief and where he could not have reasonably asserted his claim based on this principle on appeal, it will subsequently be considered on a petition for post-conviction relief. To be entitled to relief, the petitioner must assert a 'substantial denial' of constitutional rights [citing authority, including *Pettibone,* 43 Or App at 959]. In *Nunn v. Cupp,* [10 Or App at 534,] we held that an exception to the general rule that an issue raised and considered on direct appeal cannot be reconsidered in a post-conviction proceeding applies where the law with respect to that issue has changed since the time of appeal and that new law is to be applied retroactively. *Although we did not expressly limit our ruling in that case to constitutional questions, the claim in question there was of constitutional dimensions.*"

*Id.* at 695-96 (citations omitted; emphasis added). We then noted that the law concerning merger of convictions had changed between the time of the petitioner's conviction and the post-conviction proceeding by way of decision, in *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979). *Myers,* 49 Or App at 696-97. We continued:

"Petitioner frames his claim for relief in the present case in constitutional terms. However, he fails to allege any facts in his petition which demonstrate that his claim is based on a new *constitutional* principle. And, even if new *constitutional* law were established in *Cloutier,* that new law would still have to be found to be retroactive. However, *Cloutier* is, in fact, a decision concerning statutory construction. It enunciates no new constitutional principle.

"* * * While we recognize the possible merit in some of petitioner's claims, we note that this is not a case where there is a substantial denial of *constitutional* rights. Petitioner's claims are actually statutory. He is asking us to consider his contentions because he failed to raise them on direct appeal and/or because our prior decisions in this area were wrong, not because of the development of some new constitutional principle."

*Id.* at 697 (emphasis in original; footnote omitted).

Thus, in *Myers,* we held that the exception in ORS 138.550(2) can be triggered only by intervening changes in constitutional law and not by changes in statutory or other

nonconstitutional law. We did not explain that holding by reference either to statutory text or to controlling precedent. *See also Addicks v. Cupp*, 54 Or App 830, 838, 636 P2d 454 (1981), *rev den*, 292 Or 568, *cert den*, 459 US 842 (1982) (sole reported decision relying on *Myers* as authority for holding that a change in constitutional law is necessary to trigger the exception in ORS 138.550(2)).

ORS 138.550(2) provides that, when a post-conviction petitioner sought direct appeal of a sentence, no "ground" for post-conviction relief may be asserted unless that "ground" was not and could not reasonably have been asserted on direct appeal. In turn, ORS 138.530(1)(c) provides that the "grounds" for post-conviction relief include a "[s]entence in excess of, or otherwise not in accordance with, the sentence authorized by law for the crime of which petitioner was convicted; *or* unconstitutionality of such sentence." (Emphasis added.) Thus, the post-conviction statute uses the term "grounds" for post-conviction relief to refer both to constitutional and nonconstitutional errors.

■    Given the principle of *stare decisis*, we do not lightly overrule prior case law construing statutes. Rather, we do so only if " 'error is plainly shown to exist.' " *See Newell*, 156 Or App at 380, *quoting Multnomah County v. Sliker*, 10 Or 65, 66 (1881)). We conclude, however, that *Myers* was plainly wrong in its holding that ORS 138.550(2) applies only to constitutional grounds for post-conviction relief.

Our conclusion in that regard is rooted in the statutory text: Nothing in the language of the post-conviction statutes indicates that the last clause in ORS 138.550(2) is limited to intervening changes in constitutional law. As noted, ORS 138.530 provides several grounds for post-conviction relief, some of which are constitutionally based, and some of which are not. ORS 138.550(2) simply refers to "ground for relief" and contains no limitation as to what type of "ground for relief" may serve as the basis for a post-conviction claim after a direct appeal. Likewise, nothing in the context of those two statutes—that is, the post-conviction act codified at ORS 138.510 to 138.680—supports such a limitation. Conversely, to read a "constitutional ground" limitation into ORS 138.550(2) is to impermissibly "insert what has been

omitted[.]" ORS 174.010. We thus conclude that *Myers* was clearly incorrect in its holding that the exception in ORS 138.550(2) is limited to constitutionally based claims and we overrule that holding.

■     The question thus reduces to whether petitioner's present challenge to the imposition of multiple convictions for aggravated murder "could not reasonably have been asserted" on direct appeal. ORS 138.550(2).[5] In particular, given our preexisting holding in *Hessel*, was petitioner excused for purposes of ORS 138.550(2) from raising his present challenge on direct appeal?

In *North*, 254 Or at 456-57, the court explored the contours of the "could not reasonably have been raised" exception:

> "The most common illustration is where the objection could conceivably have been made but could not reasonably have been expected. Examples are where the right subsequently sought to be asserted was not generally recognized to be in existence at the time of trial; where counsel was excusably unaware of facts which would have disclosed a basis for the assertion of the right; and where duress or coercion prevented assertion of the right."

In *Long v. Armenakis*, 166 Or App 94, 101, 999 P2d 461, *rev den*, 330 Or 361 (2000), we amplified that analysis:

> "[W]hen a new constitutional principle has been articulated between the time of a petitioner's direct appeal and the post-conviction proceeding, a claim based on the new constitutional principle will be considered in the post-conviction proceeding even though it was not raised at trial

---

[5] Given our analysis and disposition of that question, we need not decide whether the statutory interpretation announced in *Barrett* is to be given retroactive application in the context of post-conviction relief proceedings. *See Moen v. Petterson*, 312 Or 503, 508-10, 824 P2d 404 (1991) ("a court *must* analyze retroactivity when considering whether to apply a newly announced rule" to a post-conviction case (emphasis added)). As we discussed in *Teague v. Palmateer*, 184 Or App 577, 584-85, 57 P3d 176 (2002), *rev den*, 335 Or 181 (2003), to be entitled to post-conviction relief, the petitioner must demonstrate both that the newly announced legal principle is to be applied retroactively and that the petitioner's assertion of a claim based on that newly announced principle is not procedurally barred by issue preclusion under ORS 138.550(2). If the petitioner fails to establish one of those two cumulative conditions, it is unnecessary to address the other. *See Teague*, 184 Or App at 584-85.

or on appeal. The same result does not necessarily follow where the constitutional principle is an acknowledged one, and the uncertainty is in its scope or application to a particular circumstance. The touchstone is not whether a particular questions is *settled*, but whether it reasonably is to be *anticipated* so that it can be raised and settled accordingly. The more settled and familiar. a constitutional or other principle on which a claim is based, the more likely the claim reasonably should have been anticipated and raised. Conversely, if the constitutional principle is a new one, or if its extension to a particular statute, circumstance, or setting is novel, unprecedented, or surprising, then the more likely the conclusion that the claim reasonably could not have been raised."

(Emphasis in original; citations omitted.)

No Oregon appellate decision has addressed the applicability of ORS 138.550(2) to the circumstances presented here—*viz.*, counsel failed to pursue a matter on direct appeal where there was directly controlling adverse precedent from this court (*Hessel*), but the Oregon Supreme Court had not addressed the issue. It is, frankly, tempting to adopt the position that, because our decisions, once final, are conclusive unless or until later repudiated by the Oregon Supreme Court, criminal defendants are entitled to accept those decisions as binding—and, by extension, that a challenge to our precedent "could not reasonably have been asserted on direct appeal." Under such an approach, defendant's appellate counsel's failure to raise his present challenge on direct appeal (in *Walton II*) and to collaterally attack *Hessel* through a petition for Supreme Court review would not preclude post-conviction relief.

However tempting such a bright-line approach might be, the proper application of ORS 138.550(2) in these circumstances is not necessarily so simple. Indeed, a categorical approach may well contradict the statute's reasonableness standard. Consider the following hypothetical variations on the "could not reasonably have been asserted" theme. Assume that a criminal defendant is faced with squarely controlling Oregon Court of Appeals precedent (as

was petitioner here), but further assume that the circumstances pertaining to that precedent, and whether the defendant should challenge it, vary as follows:

- The Court of Appeals precedent was, literally, a case of first impression on a question of federal law—that is, that no other court had addressed that question—and no subsequent case (from any jurisdiction) has addressed the question.

- The Court of Appeals precedent involved a question of federal law, and it was contrary to the overwhelming view of other jurisdictions, both state and federal on that question. Subsequent decisions from other jurisdictions have uniformly criticized the Court of Appeals decision.

- The Court of Appeals precedent involved a question of federal law, and there was (and remains) a considerable split of authority on that question among other jurisdictions.

- The Court of Appeals precedent involved a question of federal law and it accorded with the unanimous and extensive body of law from other jurisdictions. Since that decision, many more jurisdictions have commented favorably on the Court of Appeals precedent.

- The Court of Appeals precedent decided a question of first impression of Oregon law.

- The Court of Appeals precedent on a question of Oregon law was not merely a single case, but a series of cases reiterating the initial holding over a period of years—and the Oregon Supreme Court has repeatedly denied review of those cases.

In which of those circumstances would a contemporaneous challenge to the existing Court of Appeals precedent "not reasonably have been asserted"? That is, in which of those circumstances could a petitioner, who, as a criminal defendant, had failed to challenge that precedent, obtain post-conviction relief based on a later repudiation of that precedent?

As the hypotheticals suggest, the answer may vary depending on a range of considerations: How novel or controversial was the intermediate appellate court precedent? How well-reasoned was it? To what extent had subsequent decisions and developments cast doubt on the correctness of that precedent? Has the appellate court of last resort repeatedly denied review of intermediate appellate decisions adhering to that precedent?[6]

Ultimately, the question is one of reasonableness, depending on the circumstances of the particular case. We acknowledge that such an approach offers less guidance, and perhaps less comfort, than a categorical treatment by which criminal appellate counsel's failure to challenge this court's controlling precedent would be deemed either "reasonable" or "unreasonable" for purposes of ORS 138.550(2). Still, as illustrated above, "could not reasonably have been asserted" defies such categorical treatment.

We conclude that, *Hessel* notwithstanding, petitioner's present challenge could reasonably have been raised in *Walton II*. It is significant, albeit not dispositive, that petitioner's criminal trial counsel raised and preserved a *Barrett*-like challenge to the imposition of the multiple sentences for aggravated murder. *See* 196 Or App at 337. At the time trial counsel raised that objection, we had decided *Hessel*—and, indeed, counsel acknowledged that "the case law is clearly against us"—but he made the argument nevertheless. *Hessel* was the only reported decision resolving that question of Oregon law. There was, of course, no authoritative Oregon Supreme Court decision. Given that posture, although it was unlikely that *we* would have revisited and repudiated *Hessel*,[7] it would not have been unreasonable for appellate counsel to have raised the already preserved issue before us

---

[6] We are, of course, well aware that the Oregon Supreme Court and the United States Supreme Court may elect not to engage in discretionary review for myriad reasons and that that refusal does not imply any view as to the merits of the challenged decision. Nevertheless, in the face of repeated denials of review of other decisions presenting the same issue, appellate counsel might conclude, not unreasonably, that yet another petition raising the same claim would likely meet the same fate.

[7] As noted, to do so, we would have been required to conclude that *Hessel*, which we had decided only a couple of years before, was plainly wrong. *See* 196 Or App at 343. *Cf. Burnell*, 129 Or App at 107 (adhering to *Hessel*).

in order to seek Supreme Court review of a novel issue of statutory construction. Nothing in this record suggests that counsel's failure in that regard was excused by anything even approaching futility.

Petitioner failed to establish that his present *Barrett*-based challenge "could not reasonably have been asserted" on direct appeal. ORS 138.550(2). Accordingly, the trial court properly denied post-conviction relief on that ground.

We reject without discussion petitioner's remaining assignments of error.

Affirmed.